**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-------------------------------------------------------------x
SUNDY C. MARTIN                    :      CASE ACTION NO.
        Plaintiff                  :
                                   :
v.                                 :
                                   :
PUCUDA, INC. and                   :
JOHN REXROAD                       :
        Defendants                 :      APRIL 13, 2011
-------------------------------------------------------------x
```

**COMPLAINT**

## INTRODUCTION

1. This is action to redress discrimination and wrongful termination in violation of Title VII of the Civil Rights Act of 1964 (U.S.C. § 2000e *et seq.*), as amended, the laws of the State of Connecticut enumerated in Connecticut General Statutes § 46a-60(a)(1) and (a)(4), and the common laws of the State of Connecticut.

## PARTIES AND JURISDICTION

2. The plaintiff, Sundy C. Martin (hereinafter referred to as "the plaintiff"), was and is a resident of the town of East Haddam, Connecticut.

3. The defendant, PUCUDA, Inc. (hereinafter referred to as "PUCUDA" or "the company"), was and is a corporation organized under the laws of the State of Connecticut with a principal place of business at 500 Main Street, Deep River, Connecticut.

4.  The defendant, John Rexroad (hereinafter referred to as "Mr. Rexroad"), was and is a resident of the town of Killingworth, Connecticut.

5.  The defendant Mr. Rexroad was at times relevant to this complaint and remains the President of PUCUDA. President Rexroad was an executive agent of the defendant company and his actions are to be construed as the actions of the defendant company through the doctrine of respondent superior.

6.  Jurisdiction of this Court is invoked under the provisions of 28 U.S.C. §1331, federal question jurisdiction, as the plaintiff's claims arise, *inter alia*, under the laws of the United States, namely, Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq*., as amended.

7.  The plaintiff has exhausted her administrative remedies. The plaintiff filed a timely complaint with the Connecticut Commission on Human Rights and Opportunities (CCHRO), as well as the Equal Employment Opportunities Commission (EEOC) on or about July 19, 2010.

8.  The plaintiff received a right to sue from the EEOC on April 6, 2011 and a right to sue from the CHRO on April 7, 2011, and said notices are appended to this complaint as "Exhibit A." This action is brought within 90 days of the right to sue notices.

**FACTS:**

9.  The plaintiff was employed with the defendant PUCUDA from February 2004 through the date of the termination of her employment, April 30, 2010.

10. Defendant company designs and manufactures safety netting for construction, fall protection, and amusement netting products.

2

11. Throughout the course of the plaintiff's employment, she worked as the controller / bookkeeper / office manager, and handled PUCUDA's accounts and books.

12. Throughout the course of the plaintiff's employment, the defendant Mr. Rexroad acted as her immediate supervisor and was and still remains the president of the company.

13. Immediately after the plaintiff started her employment with PUCUDA, she was subject to a severe, pervasive and unrelenting hostile work environment, harassment, discrimination, retaliation and differential treatment.

14. When the plaintiff first started her employment, PUCUDA was in the midst of serious financial hardship. The plaintiff was hired to do bookkeeping and maintain the company's accounts. The company was in significant debt and its vendors were not getting paid. In addition, the company was not paying taxes to the state or federal government.

15. Immediately upon the commencement of her employment with PUCUDA, the plaintiff noticed that its president, Mr. Rexroad, regularly and inappropriately paid for personal expenses with business monies. Mr. Rexroad paid for his and his wife's personal expenses directly through the company's finances.

16. The plaintiff made numerous complaints to Mr. Rexroad that his practices were unlawful, and thereafter, he began to discriminate against her at work and subject her to significant harassment.

17. Throughout the course of the plaintiff's employment, Mr. Rexroad regularly called her degrading names in front of co-workers.

18. Mr. Rexroad's conduct toward the plaintiff was extremely abusive, harassing and degrading. For example, Mr. Rexroad would often become enraged at work and refer to the plaintiff as, *inter alia*: "cunt", "bitch", "pig", "hoochie mama", "cow", "fat", "dog", "asshole", "selfish", "controller", "liar", "whore" and/or "slut". Frequently, when he referred to the plaintiff using one or more of these terms, he would preface it with "fucking" or some other derogatory insult or term.

19. Mr. Rexroad's treatment and harassment towards the plaintiff was shocking not only to her, but also to her co-workers, who overheard and witnessed the harassment and discrimination.

20. Often, the next day after Mr. Rexroad spoke to the plaintiff in a derogatory manner, he would provided the plaintiff with personal gifts, presumably as a form of apology because he realized his actions were inappropriate.

21. Of the presents that Mr. Rexroad gave the plaintiff, many had a negative or sexual tone or connotation to them. These gifts were extremely insulting to the plaintiff. For example, one time when he returned from Spain he brought the plaintiff a gift which had a pig on the front of a can. He stated to the plaintiff that the picture on the can was the only thing that he could find that reminded him of her, a "fat pig."

22. These comments and gifts were humiliating and offensive to the plaintiff and witnessed by her co-wokers.

23. On one occasion, Mr. Rexroad, knowing that the plaintiff loved horses, gave her a jade horse as a present. Other employees witnessed Mr. Rexroad give the plaintiff a personal gift at work and the employees made insulting comments regarding same.

4

24. After Mr. Rexroad returned from one business trip, he placed a stuffed poodle on the plaintiff's desk, giving it to her as a gift. The poodle was animated and sang a song entitled "Johnny Angel." Mr. Rexroad sat on the plaintiff's desk and played it for her and stated that she was supposed to play it when he took money from the company so that she could remember that he was her angel. Mr. Rexroad stated that deep down he knew that the plaintiff loved him.

25. Having been exposed to offensive comments from other co-workers regarding gifts from Mr. Rexroad in the past, the plaintiff tried to put this gift out of sight in her desk drawer. However, Mr. Rexroad would not let her do so and required that she keep it displayed on her desk, though he knew full well that such gifts prompted unwelcome comments from other co-workers.

26. On another occasion Mr. Rexroad purchased a sleeping puppy dog as a gift for the plaintiff. He stated that he bought this for the plaintiff to encourage her to relax after he berated or harassed her.

27. Once again, Mr. Rexroad required that the plaintiff keep this gift on her desk, causing her to suffer an extreme level of embarrassment and humiliation.

28. Mr. Rexroad also bought the plaintiff a raccoon hat and told her that he bought it for her because it reminded him of how annoying the she was.

29. On another occasion, Mr. Rexroad returned from a trip to Disney and gave the plaintiff a stuffed poodle dressed in leopard skin with black boots. On top of it, he placed a frog, which he told the plaintiff was her husband. When the plaintiff asked why she was the poodle and her husband the frog, Mr. Rexroad stated: "because you are a hootchie momma and your husband is a frog."

5

30. On another occasion Mr. Rexroad purchased a model / toy cow that was dressed in a lascivious and provocative manner. He gave it to the plaintiff as a gift and stated that it reminded him of her because "it was a cow and it was a slut."

31. Later, when a customer asked Mr. Rexroad about the cow, he repeated this comment to said customer. The customer later informed the plaintiff in private that said conduct should not be tolerated and that it was against the law.

32. On another occasion Mr. Rexroad gave the plaintiff a Barbie doll that was dressed in a provocative manner. Mr. Rexroad stated to the plaintiff: "I got this because it reminded me of you." He then stated that the plaintiff must like being "a hootchie momma" and that she was a "slut" for her husband on Friday nights.

33. Mr. Rexroad was, in fact, aware that the plaintiff and her husband had a regularly scheduled "date night" together on Friday nights. He used this personal information to harass and insult her.

34. The aforementioned is but one example of the numerous harassing statements that Mr. Rexroad directed to the plaintiff regarding her relationship with her husband during the entire period of the plaintiff's employment with PUCUDA.

35. In or around the fall of 2009, Mr. Rexroad came into the office and asked the plaintiff for money from the company expense account, again for personal reasons. The plaintiff stated that it was impossible to provide him with said funds based on business sales at that time. Such refusal was in keeping with the plaintiff's job description as controller / bookkeeper / office manager. Mr. Rexroad proceeded to scream at the plaintiff and insult her by calling her a "fucking cunt" and a "bitch". Mr. Rexroad then, in a threatening and violent

6

manner, clenched his fist, became red in the face, and stood within six inches of
the plaintiff's face and screamed at her. Such actions struck fear into the plaintiff
and caused her to apprehend that Mr. Rexroad was going to strike her.

36. Mr. Rexroad continued screaming, raising his arm at the plaintiff and jumping at
her as if he was going to strike her.

37. Herve Rivard, a co-worker of the plaintiff, witnessed this incident.

38. On another occasion, the plaintiff insisted to Mr. Rexroad that he could not
continue to pay personal expenses with work funds.  Once again, Mr. Rexroad
screamed at the plaintiff and called her names including a "fucking cunt." Then,
Mr. Rexroad proceeded to rip drawers from the desks and throw them violently
around the room, and in close proximity to the plaintiff, causing her to fear that
the drawers would strike her.

39. While in this rage, Mr. Rexroad threw all of the items off of his desk and left his
office leaving the plaintiff responsible for cleaning up.

40. Throughout the term of her employment the plaintiff complained to Mr. Rexroad
on numerous occasions that she did not appreciate the way he was treating her,
and that she felt like he was harassing her and speaking to her inappropriately.  In
addition, she stated that his actions with respect to using company funds to pay
for personal expenses were inappropriate in that they constituted tax fraud.
Whenever the plaintiff raised such concerns, Mr. Rexroad would only get mad at
the plaintiff and threaten her job security and state that if she did not like it that he
would replace her.

41. On one occasion in 2009, in response to the plaintiff's complaints, Mr. Rexroad called the plaintiff a "bitch" and threw a McDonalds bag that he was holding, which was full of trash, at the plaintiff's head, hitting her.

42. On another occasion, when Mr. Rexroad was angry at the plaintiff for complaining, he threw a stuffed bear at her, hitting her in the chest.

43. Mr. Rexroad also spoke negatively about women in general. He often referred to women, including his wife, as "fat", "lazy" or as "bitches."

44. Mr. Rexroad also spoke about his sex life with the plaintiff in great detail, which made the working environment very uncomfortable. Mr. Rexroad spoke to the plaintiff about sex positions that he performed with his wife, as well as his masturbating by himself and with his wife. Again, this made the plaintiff very uncomfortable and caused her to feel embarrassed.

45. Mr. Rexroad's computer screen was extremely large. Mr. Rexroad posted a picture of a naked boy statute as a screen saver on his computer. Mr. Rexroad desired to purchase this statute and allowed his computer screen to display a naked boy so that his employees could see it. It made the working environment extremely uncomfortable.

46. Such aforesaid actions by the Mr. Rexroad created a sexually hostile work environment.

47. In the early spring of 2010, the plaintiff again approached Mr. Rexroad and informed him that she did not appreciate being harassed in such a manner, and that she did not want him to speak to her the way he did. Furthermore, the plaintiff again stated that it was improper for the Mr. Rexroad to use company

funds to pay for his personal expenses.    Although the company remained financially troubled, Mr. Rexroad continued to pay personal expenses through the company.   This caused taxes to go unpaid or be paid late, and, in addition, caused employee to not receive payment for earned wages.

48. After the plaintiff complained, Mr. Rexroad stated: "if you don't like it you can leave and I will get someone else to replace you." This caused the plaintiff to suffer severe anxiety over the prospect of losing her job.

49. In the beginning of April 2010, the plaintiff again approached Mr. Rexroad about an issue regarding company funds and his use of company funds for personal items.   Mr. Rexroad then proceeded to call the plaintiff a "fucking bitch" and a "cunt" such that other employees could overhear said comments.   The plaintiff complained to Mr. Rexroad that she felt like he was discriminating against her and unlawfully harassing her.   She stated that she did not appreciate being called a "cunt" at work, and that she would no longer tolerate spoken to in such an offensive manner.   Lastly, the plaintiff reiterated that it was improper for Mr. Rexroad to continue to put personal items and expenses through the company and pay for them with company funds and not pay taxes.   She informed Mr. Rexroad that she would not willingly abet his commission of tax fraud.   In response Mr. Rexroad screamed at the plaintiff, asking her who she thought she was to question him.   Mr. Rexroad threatened the plaintiff that if she did not like putting up with his personality he would find some one else to replace her.

50. On April 16, 2010, the plaintiff took a short vacation from work.   On April 21, 2010, upon the plaintiff's return from vacation, she was approached by the Vice

President of PUCUDA, Jack Kryjack (hereinafter "Mr. Kryjack").  Mr. Kryjack informed the plaintiff that the President, Mr. Rexroad, had directed him to terminate her employment.  The plaintiff asked Mr. Kryjack why she was being terminated and he stated that it was because she had made complaints to management and because she had stated that she would not do the things Mr. Rexroad asked of her.

51. On May 5, 2010, Mr. Rexroad called the plaintiff and asked to meet her for lunch. At the meeting, he reiterated to the plaintiff that her employment was terminated. Mr. Rexroad also stated that the plaintiff should not report him to the IRS or file a complaint with the state for harassment or discrimination.  Mr. Rexroad stated that the plaintiff should keep her complaints to herself because it would only get her into trouble and hurt her friends who still worked for the company.

**COUNT ONE:**                **Sex / Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) as amended (PUCUDA, INC.)**

1. Paragraphs 1 through 51, inclusive above, are hereby incorporated and made paragraphs 1 through 51 of this First Count as if fully stated herein.

52. The foregoing conduct of the defendant PUCUDA, through its agents, servants, and/or employees, constitutes discrimination against the plaintiff because of her sex/gender, is a violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) as amended.

53. As a result of the aforementioned conduct of the defendant PUCUDA, its agents, servants and/or employees, the plaintiff has lost a considerable amount of time

from her gainful employment, and she has suffered a substantial loss of income, health benefits, and retirement benefits, and will continue to suffer the loss of same into the future all to her loss and detriment.

54. As a further result of the aforementioned conduct of the defendant PUCUDA, through its agents, servants and/or employees, the plaintiff has suffered and will continue to suffer in the future, considerable emotional and psychological pain and suffering.

55. As a further result of the aforementioned conduct of the defendant PUCUDA, its agents, servants and/or employees, the plaintiff has been forced to incur attorney's fees and costs in order to obtain the rights to which she is entitled.

**COUNT TWO:**                **Sex / Gender Discrimination in Violation of Conn. Gen. Stat. §46a-60(a)(1) (PUCUDA, INC.)**

1. Paragraphs 1 through 51, inclusive above, are hereby incorporated and made paragraphs 1 through 51 of this Second Count as if fully stated herein.

52. The foregoing conduct of the defendant PUCUDA, through its agents, servants, and/or employees, constitutes discrimination against the plaintiff because of her sex/gender, is a violation of Conn. Gen. Stat. §46a-60(a)(1).

53. As a result of the aforementioned conduct of the defendant PUCUDA, its agents, servants and/or employees, the plaintiff has lost a considerable amount of time from her gainful employment, and she has suffered a substantial loss of income, health benefits, and retirement benefits, and will continue to suffer the loss of same into the future all to her loss and detriment.

54. As a further result of the aforementioned conduct of the defendant PUCUDA, through its agents, servants and/or employees, the plaintiff has suffered and will continue to suffer in the future, considerable emotional and psychological pain and suffering.

55. As a further result of the aforementioned conduct of the defendant PUCUDA, its agents, servants and/or employees, the plaintiff has been forced to incur attorney's fees and costs in order to obtain the rights to which she is entitled.

**COUNT THREE:**   **Retaliation in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) as amended (PUCUDA, INC.)**

1. Paragraphs 1 through 51, inclusive above, are hereby incorporated and made paragraphs 1 through 51 of this Third Count as if fully stated herein.

52. The aforementioned conduct of the defendant PUCUDA through its agents, servant and/or employees constituted retaliation in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) as amended.

53. As a result of the aforementioned conduct of the defendant PUCUDA, its agents, servants and/or employees, the plaintiff has lost a considerable amount of time from her gainful employment, and she has suffered a substantial loss of income, health benefits, and retirement benefits, and will continue to suffer the loss of same into the future all to her loss and detriment.

54. As a further result of the aforementioned conduct of the defendant PUCUDA, through its agents, servants and/or employees, the plaintiff has suffered and will

continue to suffer in the future, considerable emotional and psychological pain and suffering.

55. As a further result of the aforementioned conduct of the defendant PUCUDA, its agents, servants and/or employees, the plaintiff has been forced to incur attorney's fees and costs in order to obtain the rights to which she is entitled.

**COUNT FOUR:**               **Retaliation in violation of Conn. Gen. Stat. § 46a-60(a)(4)**
                                        **(PUCUDA, INC.)**

1. Paragraphs 1 through 51, inclusive above, are hereby incorporated and made paragraphs 1 through 51 of this Fourth Count as if fully stated herein.

52. The aforementioned conduct of the defendant PUCUDA through its agents, servant and/or employees constituted retaliation in violation of Conn. Gen. Stat. § 46a-60(a)(4).

53. As a result of the aforementioned conduct of the defendant PUCUDA, its agents, servants and/or employees, the plaintiff has lost a considerable amount of time from her gainful employment, and she has suffered a substantial loss of income, health benefits, and retirement benefits, and will continue to suffer the loss of same into the future all to her loss and detriment.

54. As a further result of the aforementioned conduct of the defendant PUCUDA, through its agents, servants and/or employees, the plaintiff has suffered and will continue to suffer in the future, considerable emotional and psychological pain and suffering.

55. As a further result of the aforementioned conduct of the defendant PUCUDA, its agents, servants and/or employees, the plaintiff has been forced to incur attorney's fees and costs in order to obtain the rights to which she is entitled.

**COUNT FIVE:**          **Wrongful termination in violation of public policy (PUCUDA, INC.)**

1. Paragraphs 1 through 51, inclusive above, are hereby incorporated and made paragraphs 1 through 51 of this Fifrth Count as if fully stated herein.

52. The defendant PUCUDA acting through its agents, servant and/or employees retaliated against the plaintiff for making complaints of illegal and improper conduct by PUCUDA's President, John Rexroad.

53. As a result of the plaintiff's complaints of illegal and improper conduct by the defendant Mr. Rexroad, PUCUDA terminated the plaintiff's employment.

54. The defendant PUCUDA's aforementioned actions towards the plaintiff, and the termination of the plaintiff's employment, through its agents, servant, and/or employees, is in violation of, *inter alia*, the following important and clearly articulated public policies:

   a. The prohibition on attempting to evade or defeat any federal income tax as embodied in the United States Internal Revenue Code, 26 U.S.C. § 7201.

   b. The prohibition on the willful failure to supply information or pay federal income tax as embodied in the United States Internal Revenue Code, 26 U.S.C. § 7203.

14

c. The prohibition on attempts to interfere with the administration of internal revenue laws as embodied in the United States Internal Revenue Code, 26 U.S.C. § 7212.

d. The prohibition on the willful violation of requirements related to payment of the Connecticut Corporation Business tax as embodied in Conn. Gen. Stat. § 12-231(a).

e. The prohibition on evading or committing fraud with regard to Connecticut Income Tax as embodied in Conn. Gen. Stat. § 12-736.

f. The prohibition on willful evasion of the Connecticut Income Tax as embodied in Conn. Gen. Stat. § 12-737.

55. The plaintiff is otherwise without remedy for her retaliatory discharge and permitting said discharge to go unaddressed would leave the valuable social policies cited above unvindicated.

56. As a result of the PUCUDA's actions and terminating the plaintiff's employment, the plaintiff has suffered loss compensation, including but not limited to lost wages, fringe benefits and the termination of her employment.

57. Additionally, as a direct and proximate result of PUCUDA's actions, as aforesaid, the plaintiff has suffered emotional distress, which the defendant knew, or should have known, would result from its actions.

58. Furthermore, as a result of the PUCUDA's actions, as aforesaid, the plaintiff has been forced to spend legal fees and costs in order to obtain the rights to which she is entitled.

**COUNT SIX:**            **Discharge in violation of Conn. Gen. Stat. § 31-51q (PUCUDA, INC.)**

1. Paragraphs 1 through 51, inclusive above, are hereby incorporated and made paragraphs 1 through 51 of this Sixth Count as if fully stated herein.

52. The defendant PUCUDA, through its agents, servant and/or employees retaliated against the plaintiff by terminating her employment for expressing her objections to Mr. Rexroad's use of company funds to pay his person expenses in violation of federal and state tax laws.

53. Such statements by the plaintiff, concerning the defendants' tax fraud, are matters of public concern.

54. Such statements pertaining to matters of public concern are protected speech under Conn. Gen. Stat. § 31-51q.

55. The defendant PUCUDA's retaliatory termination of the plaintiff for making statements regarding matters of public concern is a violation of Conn. Gen. Stat. § 31-51q.

56. As a result of the PUCUDA's actions and terminating the plaintiff's employment, the plaintiff has suffered loss compensation, including but not limited to lost wages, fringe benefits and the termination of her employment.

57. Additionally, as a direct and proximate result of PUCUDA's actions, as aforesaid, the plaintiff has suffered emotional distress, which the defendant knew, or should have known, would result from its actions.

58. Furthermore, as a result of the PUCUDA's actions, as aforesaid, the plaintiff has been forced to spend legal fees and costs in order to obtain the rights to which she is entitled.

**COUNT SEVEN:**            **Intentional Infliction of Emotional Distress**
                                   **(PUCUDA, INC.)**

1. Paragraphs 1 through 51, inclusive above, are hereby incorporated and made paragraphs 1 through 51 of this Second Count as if fully stated herein.

52. The foregoing conduct of the defendant PUCUDA, through its agents, servants, and/or employees, was extreme and outrageous.

53. The defendant PUCUDA, through its agents, servants, and/or employees, intended to inflict emotional distress upon the plaintiff and knew, or in the exercise of reasonable care, should have known, that emotional distress was the likely result of the aforementioned conduct.

54. As a result of the aforementioned conduct of defendant PUCUDA, through its agents, servants, and/or employees, the plaintiff has suffered severe emotional distress and loss of income.

55. As a further result of the aforementioned conduct of defendant PUCUDA, through its agents, servants, and/or employees, the plaintiff has suffered, and will continue to suffer in the future, severe emotional and psychological pain and suffering.

56. As a further result of the aforementioned conduct of the defendant PUCUDA, through its agents, servants, and/or employees, the plaintiff has been forced to incur attorney's fees and costs in order to obtain the rights to which she is entitled.

**COUNT EIGHT:**             **Intentional Infliction of Emotional Distress**
                                   **(JOHN REXROAD)**

1. Paragraphs 1 through 51, inclusive above, are hereby incorporated and made paragraphs 1 through 51 of this Eighth Count as if fully stated herein.

52. The actions of the defendant Mr. Rexroad were extreme and outrageous.

53. The defendant Mr. Rexroad intended to inflict emotional distress upon the plaintiff and knew, or in the exercise of reasonable care, should have known, that emotional distress was the likely result of the aforementioned conduct.

54. As a result of the aforementioned conduct of the defendant Rexroad, the plaintiff has suffered severe emotional distress and loss of income.

55. As a further result of aforementioned conduct of the defendant Rexroad, the plaintiff has suffered, and will continue to suffer in the future, severe emotional and psychological pain and suffering.

56. As a further result of aforementioned conduct of the defendant Rexroad, the plaintiff has been forced to incur attorney's fees and costs in order to obtain the rights to which she is entitled.

**COUNT NINE:**         **Negligent Infliction of emotional distress (PUCUDA, INC.)**

1. Paragraphs 1 through 51, inclusive above, are hereby incorporated and made paragraphs 1 through 51 of this Ninth Count as if fully stated herein.

52. The defendant PUCUDA, through its agents, servants and employees, negligently inflicted emotional distress upon the plaintiff, and knew or should have known the plaintiff's emotional distress was likely to result from its discriminatory practices, its treatment of the plaintiff, and its subsequent termination of the plaintiff for pretextual reasons.

53. The defendant PUCUDA's conduct of discriminatory practices up to and including its subsequent termination of the plaintiff for pretextual reasons,

accompanied by threats of harm to her friend co-workers if she reported any of the unlawful behavior that she witnessed and was subject to, created an unreasonable risk of causing the plaintiff emotional harm.

54. The plaintiff's emotional distress could and should have been foreseeable to the defendant PUCUDA in that its discriminatory conduct and subsequent termination of the plaintiff, accompanied by threats of harm to her friend co-workers if she reported any of the unlawful behavior that she witnessed and was subject to, would emotionally disturb any reasonable person.

55. Due to the defendant PUCUDA's conduct, the plaintiff was caused to suffer severe emotional distress, including but not limited to intimidation, embarrassment, stress, anxiety, frustration and humiliation, which has limited her ability to enjoy life's pleasures.

56. As a further result of aforementioned conduct of the defendant PUCUDA, the plaintiff has suffered, and will continue to suffer in the future, severe emotional and psychological pain and suffering.

57. As a further result of aforementioned conduct of the defendant PUCUDA, the plaintiff has been forced to incur attorney's fees and costs in order to obtain the rights to which she is entitled.

**COUNT TEN:**          **Negligent Infliction of emotional distress**
                        **(JOHN REXROAD)**

1. Paragraphs 1 through 51, inclusive above, are hereby incorporated and made paragraphs 1 through 51 of this Tenth Count as if fully stated herein.

52. The defendant Mr. Rexroad, negligently inflicted emotional distress upon the plaintiff, and knew or should have known the plaintiff's emotional distress was likely to result from his discriminatory practices, his treatment of the plaintiff, and his subsequent termination of the plaintiff for pretextual reasons.

53. The defendant Mr.Rexroads's conduct of derogatory conducts, physical threats, and discriminatory practices up to and including his subsequent termination of the plaintiff for pretextual reasons, accompanied by threats of harm to her friend co-workers if she reported any of the unlawful behavior that she witnessed and was subject to, created an unreasonable risk of causing the plaintiff emotional harm.

54. The plaintiff's emotional distress could and should have been foreseeable to the defendant Mr. Rexroad in that his discriminatory conduct and subsequent termination of the plaintiff, accompanied by threats of harm to her friend co-workers if she reported any of the unlawful behavior that she witnessed and was subject to, would emotionally disturb any reasonable person.

55. Due to the defendant Mr. Rexroad's conduct, the plaintiff was caused to suffer severe emotional distress, including but not limited to intimidation, embarrassment, stress, anxiety, frustration and humiliation, which has limited her ability to enjoy life's pleasures.

56. As a further result of aforementioned conduct of the defendant Mr. Rexroad, the plaintiff has suffered, and will continue to suffer in the future, severe emotional and psychological pain and suffering.

57. As a further result of aforementioned conduct of the defendant Mr. Rexroad, the plaintiff has been forced to incur attorney's fees and costs in order to obtain the rights to which she is entitled.

**COUNT ELEVEN:**          **Assault**
                          **(PUCUDA, INC.)**

1. Paragraphs 1 through 51, inclusive above, are hereby incorporated and made paragraphs 1 through 51 of this Eleventh Count as if fully stated herein.

52. The aforesaid conduct of the defendant PUCUDA by its employee Mr. Rexroad, acting within the scope of his employment, willfully and intentionally caused the plaintiff to apprehend that she would be immediately offensively contacted.

53. The aforesaid conduct of the defendant PUCUDA by its employee Mr. Rexroad, acting within the scope of his employment, constituted assault against the plaintiff.

54. As a result of said assault the plaintiff was caused to suffer severe emotional distress, including but not limited to intimidation, embarrassment, stress, anxiety, frustration and humiliation, which has limited her ability to enjoy life's pleasures.

55. As a further result of the aforementioned assault, the plaintiff has suffered, and will continue to suffer in the future, severe emotional and psychological pain and suffering.

56. As a further result of the aforementioned assault, the plaintiff has been forced to incur attorney's fees and costs in order to obtain the rights to which she is entitled.

**COUNT TWELVE:**           **Assault**
                            **(JOHN REXROAD**

1. Paragraphs 1 through 51, inclusive above, are hereby incorporated and made paragraphs 1 through 51 of this Twelfth Count as if fully stated herein.

52. The aforesaid conduct of the defendant Rexroad willfully and intentionally caused the plaintiff to apprehend that she would be immediately offensively contacted.

53. The aforesaid conduct of the defendant Rexroad constituted assault against the plaintiff.

54. As a result of said assault the plaintiff was caused to suffer severe emotional distress, including but not limited to intimidation, embarrassment, stress, anxiety, frustration and humiliation, which has limited her ability to enjoy life's pleasures.

55. As a further result of said assault, the plaintiff has suffered, and will continue to suffer in the future, severe emotional and psychological pain and suffering.

56. As a further result of said assault, the plaintiff has been forced to incur attorney's fees and costs in order to obtain the rights to which she is entitled.


**COUNT THIRTEEN:**         **Battery**
                            **(PUCUDA, INC.)**

1. Paragraphs 1 through 51, inclusive above, are hereby incorporated and made paragraphs 1 through 51 of this Thirteenth Count as if fully stated herein.

52. The aforesaid conduct of the defendant PUCUDA by its employee Mr. Rexroad, acting within the scope of his employment, willfully and intentionally caused harmful and offensive contact with the plaintiff.

53.  The aforesaid conduct of the defendant PUCUDA by its employee Mr. Rexroad, acting within the scope of his employment, constituted battery against the plaintiff.

54. As a result of said battery, the plaintiff was caused to suffer severe emotional distress, including but not limited to intimidation, embarrassment, stress, anxiety, frustration and humiliation, which has limited her ability to enjoy life's pleasures.

55. As a further result of said battery, the plaintiff has suffered, and will continue to suffer in the future, severe emotional and psychological pain and suffering.

56. As a further result of said battery, the plaintiff has been forced to incur attorney's fees and costs in order to obtain the rights to which she is entitled.

**COUNT FOURTEEN:**      **Battery**
                         **(JOHN REXROAD)**

1.  Paragraphs 1 through 51, inclusive above, are hereby incorporated and made paragraphs 1 through 51 of this Fourteeth Count as if fully stated herein.

52. The aforesaid conduct of the defendant Mr. Rexroad willfully and intentionally caused harmful and offensive contact with the plaintiff.

53.  The aforesaid conduct of the defendant Mr. Rexroad constituted battery against the plaintiff.

54. As a result of said battery, the plaintiff was caused to suffer severe emotional distress, including but not limited to intimidation, embarrassment, stress, anxiety, frustration and humiliation, which has limited her ability to enjoy life's pleasures.

55. As a further result of said battery, the plaintiff has suffered, and will continue to suffer in the future, severe emotional and psychological pain and suffering.

**56.** As a further said battery, the plaintiff has been forced to incur attorney's fees and
costs in order to obtain the rights to which she is entitled.

**WHEREFORE,** the Plaintiff prays for the following relief:

1.   Assume jurisdiction over this matter;

2.   Money damages;

3.   Damages for lost wages, lost benefits, lost fringe benefits, front pay and reinstatement;

4.   Damage for emotional distress;

5.   Punitive damages and double damages;

6.   Reasonable attorneys fee and costs; and

6.   Such other relief as the Court deems appropriate.

THE PLAINTIFF,
SUNDY C. MARTIN

By:_____
Emanuele R. Cicchiello (ct27118)
Cicchiello & Cicchiello, LLP
364 Franklin Avenue
Hartford, Connecticut  06114
Tel: (860) 296-3457
Fax: (860) 296-0676
Email: manny@cicchielloesq.com

```
-----------------------------------------------------------------x
SUNDY C. MARTIN                           :         CASE ACTION NO.
         Plaintiff                        :
                                          :
                                          :
v.                                        :
                                          :
                                          :
PUCUDA, INC. and                          :
JOHN REXROAD                              :
         Defendants                       :         APRIL 13, 2011
-----------------------------------------------------------------x
```

## REQUEST FOR TRIAL BY JURY

Plaintiff hereby requests trial by jury in the above-captioned matter.

THE PLAINTIFF,
SUNDY C. MARTIN

By:_____
Emanuele R. Cicchiello (ct27118)
Cicchiello & Cicchiello, LLP
364 Franklin Avenue
Hartford, Connecticut  06114
Tel: (860) 296-3457
Fax: (860) 296-0676
Email: manny@cicchielloesq.com

26

# **EXHIBIT A**

EEOC Form 161-B (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:  **Sundy C. Martin**
**17 Hedlund Road**
**East Haddam, CT 06423**

From:  **Boston Area Office**
**John F. Kennedy Fed Bldg**
**Government Ctr, Room 475**
**Boston, MA 02203**

| | |
|---|---|
| ☐ | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16A-2010-01354 | **Anne R. Giantonio, Intake Supervisor** | **(617) 565-3189** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]  More than 180 days have passed since the filing of this charge.

[ ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**Robert L. Sanders,**
**Area Office Director**

`APR 0 8 2011`
*(Date Mailed)*

Enclosures(s)

cc:  **PUCUDA, INC.**
**500 Main Street**
**P.O. Box 1019**
**Deep River, CT 06417**

David Cahill, Esq.
**364 Franklin Avenue**
**Hartford, CT 06114**

## STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

**Sundy C. Martin**
COMPLAINANT

vs.                                                     **DATE: April 7, 2011**

**Pucuda, Inc.**
RESPONDENT

CHRO Case No. 1140027

## RELEASE OF JURISDICTION

Pursuant to the request for a release of jurisdiction, the Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint in accordance with CONN. GEN. STAT. § 46a-101. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the Respondent transacts business. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

**A copy of any civil action brought pursuant to this release must be served on the Commission at 25 Sigourney Street, 7th Floor, Hartford, CT 06106 at the same time all other parties are served. THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION   BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

In granting this release, the Commission expressly finds in accordance with CONN. GEN. STAT. §§ 46a-100 and 46a-101(b) that all conditions precedent to the issuance of the release have been met. The complaint was timely filed under CONN. GEN. STAT. § 46a-82 and the complaint has been pending for a period of not less than 210 days. The complaint is not currently scheduled for public hearing nor is there reason to believe that the complaint will be resolved within a period of 30 days from the date the Commission received the request.

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

With the granting of this release of jurisdiction, the Commission administratively dismisses this complaint in accordance with CONN. GEN. STAT. § 46a-101(d) without cost or penalty to any party.
                                    Very truly yours,

                                    Robert J. Brothers, Jr.
                                    Executive Director

cc: Complainant's Attorney Angelo Cicchiello by e-mail to: dcahill@cicchielloesq.com
     Respondent's Attorney by e-mail to: szczesny@halloran-sage.com